OPINION
RAAS, J.
INTRODUCTION
B.B.[1] appeals the decision of the Tulalip Employment Court upholding his termination by the Tulalip Utilities Authority (TUA) from his position of Utilities Technician 1/Laborer. Jurisdiction is proper under the Tulalip Human Resources Ordinance, Tribal Ordinance 84, Chapter 9.10 Tulalip Tribal Code.[2] Appeal to this Court is timely. See Echevarria v. Tulalip Utilities Authority, 9 NICS App. 77, 8 Am. Tribal Law 424 (Tulalip Tribal Ct.App. 2010).
STANDARD OF REVIEW
The Employment Court decision is to be affirmed unless it is found to be arbitrary, capricious or an abuse of discretion. TO 84.X.B.12, TTC 9.10.950(12). See also TO 49.4.9, TTC 2.20.290. B.B., as the Appellant, has the burden to show that the Employment Court’s ruling was arbitrary, capricious or an abuse of discretion.
PROCEDURAL HISTORY
A hearing before the Employment Court was held on September 19, 2011. B.B. represented himself and Amanda Hunter (Hunter) represented the TUA. Cliff Jones and Jeremy Hadley, who were B.B.’s direct supervisors, each testified, as did Hunter. The Employment Court decision *68 was entered on September 26, 2011, B.B. timely appealed to this Court.
FACTS
B.B. was a long time employee of the TUA, and had successfully completed many courses in order to qualify for and continue to hold a responsible technical position with the TUA as a Utilities Technician 1/Laborer. On August 15, 2011, he was given a Dismissal Notice signed by Hunter. She signed both as his Department Supervisor[3] and as his Acting Department/Division Manager. A Human Resources staffer and the Acting General Manager also signed. The reasons stated for dismissal were (1) Theft or embezzlement of Tribal, public or private property in violation of TO 84.IX.D.2.h, TTC 9.10.920(2)(h); (2) Using an official position for private gain in violation of TO 84.-IX.D.2.W, TTC 9.10.920(2)(w); and (8) Unauthorized use of tribal property in violation of TO 84.IX.D.2.Z, TTC 9.10.920(2)(z). Violation of each of these sections is a Major Offense under TO 84.IX.D.2, TTC 9.10.920(2). This summary description was supplemented by a recitation of facts alleging the sale of property of the Tulalip Tribes to the Everett Recycler on July 21, 2011, without permission, and an allegation that B.B. had made, without permission, five similar sales to Everett Recycler since February 2011, receiving a total of $1,477.00 for these sales. The Dismissal Notice is unclear as to whether the alleged sale on July 21, 2011, was included in the five sales. B.B. did not challenge these substantive accusations at the hearing before the Employment Court, and the Employment Court’s findings that they are facts are binding upon this Court unless shown to be clearly erroneous.[4] TO 49.4.9(1), TTC 2.20.290(1).[5]
On August 15, 2011, neither Cliff Jones nor Jeremy Hadley, the individuals Appellant claims were in his “Chain of Command,” was available to sign the Dismissal Notice. Hunter signed the Dismissal Notice in their place, and as the Acting Department/Division Manager. B.B. was not aware that Hunter had been appointed his Acting Department Supervisor at the time he received the Dismissal Notice. The Employment Court found that it was the standard practice of the TUA for the next individual up the “Chain of Command” to sign for her/his inferior(s) when the inferiors) is not available.
ISSUES ON APPEAL
The Appellant is responsible for framing the issues on appeal, and issues not listed in a Notice of Appeal, liberally construed, or in Appellant’s brief generally cannot be considered by this Court. TO 49.4.8, TTC 2.20.080. The two issues in this appeal are:
*69 1. Was the Dismissal Notice invalid because Hunter, who signed the Dismissal Notice as B.B.’s Department Supervisor, was not the appropriate supervisor according to the TUA Chain of Command?
2. Was the Dismissal Notice invalid because Hunter, signing as B.B.’s Department Supervisor, was ineligible under the appropriate job descriptions to hold this position since she lacked the proper training?[6]
At oral argument, B.B. also sought relief on the grounds that the sanction of dismissal was improper while his criminal case for theft was pending, and that others in similar circumstances received suspensions without pay until the criminal charges were resolved. Whatever the merits of these positions, they are not properly before the Court because they were not raised either in Appellant’s Notice of Appeal or in his briefing. TO 49.4.8, TTC 2.20.080.
DISCUSSION
The Employment Court found as a matter of fact that the individual who is in the position of a TUA Department/Division Manager (which is a superior position to the Department Supervisor) typically and appropriately can act as the Department Supervisor in the absence of the Department Supervisor. B.B. does not dispute that neither Cliff Jones nor Jeremy Hadley was physically available on August 15, 2011, when the Dismissal Notice was signed, although he does claim that they could have been reached and their signature obtained. The official actions of the Tulalip government are presumed to be properly executed, absent proof to the contrary. Sheldon v. Tulalip Youth Services, 9 NICS App. 50, 53 (Tulalip Tribal Ct.App.2010). The burden of challenging this presumption of regularity and of providing proof that an alleged irregularity could have led to a material change in the governmental action lies on the party challenging the action. Here, B.B. had that burden and did not carry it. Instead, he rests his appeal on the assertions that Hunter was simply the wrong person to sign, and that she was ineligible because she did not have the proper training and certificates to hold the position of Department Supervisor.
As to the first issue, the presumption of regularity cannot be refuted by the simplistic argument that Hunter was the wrong person in the Chain of Command. Although B.B. stated at oral argument that he was unaware on August 15, 2011 (the date of the Dismissal Notice) that she had been appointed the Acting Department/Division Manager with authority over his Department Supervisor, he presented no proof to the Employment Court that she was not appropriately appointed to that position. Nor has he challenged her authority, as Acting Department/Division Manager, over his Department Supervisors). Without proof that she was improperly appointed, or that the Department/Division Manager has no authority over B.B.’s immediate superior, the Department Supervisor, his challenge that she was the wrong person to sign the Dismissal Notice fails.
The Human Resources Ordinance is not consistent in its declaration of who is a “supervisor”, “immediate supervisor”, or “Department Supervisor,” etc. Compare TO 84.X.A.7, TTC 9.10.950(7); TO 84.- *70 X.A.5, 9.10.940(5); TO 84.VILE.2, TTC 9.10.700(2) and TO 84.IX.C.6, TTC 9.10.910(6). On the facts here. B.B.’s assertion that the laek of the signature of his “immediate supervisor” renders the Dismissal Notice fatally defective is not convincing.
B.B.’s second issue on appeal, that Hunter was unqualified to hold the position of Department Supervisor, his immediate superior, who needed to sign the Dismissal Notice, also fails. The Dismissal Notice alleges embezzlement, use of a tribal position for private gain and unauthorized use of tribal property as the reasons for dismissal. Consideration of each of these accusations does not need the specialized training that a permanent occupant of the position of the Department Supervisor would have or would have gained through the certifications that B.B. claims Hunter did not have.[7] If B.B. had been dismissed for violating technical standards in water or sewer treatment established by tribal, federal or state regulations, then Hunter’s lack of qualifications, if proved both relevant and material, could be important (although not necessarily sufficient) in considering whether the claimed violations of technical standards could be approved by a Department/Division Manager acting as the Department Supervisor without the required technical certificates. But this is not the present case. The reasons given for dismissal have no bearing on any technical expertise. Hunter’s inability to hold the position of B.B.’s Department Supervisor is irrelevant to the matters set out in the Dismissal Notice.
CONCLUSION
The decision of the Employment Court upholding B.B.’s dismissal is affirmed.
IT IS SO ORDERED.
For the panel: JANE M. SMITH, Chief Justice, JOHN C. SLEDD, Justice and DANIEL A. RAAS, Justice.

. "When decisions of the Employment Court [sic] appealed to the Tulalip Court of Appeals, the Court of Appeals shall designate employee parties, whether appellant or appellee, solely by the initials of the full name of the employee." TO 84.X.B.13, TTC 9.10.950(13).

. By Resolution 2012-264, adopted on June 29, 2012 by the Tulalip Tribes Board of Directors, all Tulalip Tribal ordinances have been recodified and renumbered. No sub-stantíve changes or amendments were made to any of the ordinances. This opinion provides citations to both the former ordinances (TO, for Tribal Ordinance) and the recodification (TTC for Tulalip Tribal Code). The reco-dified ordinances can be accessed on the internet at: http://www.codepublishing.com/wa/ Tulalip/.

. The Tulalip Utilities Ordinance, TO 76, Title 13 TTC, does not use the term "Department Supervisor" which appears on the Dismissal Notice. However, B.B. submitted a document titled Tulalip Tribes Utility Department Chain oP Command’ showing Cliff Jones and Jeremy Hadley as his "Immediate Supervisors" and argued that one of them was the appropriate signer of the Dismissal Notice. Appellee TUA did not dispute these relationships.

. Whether the Employment Court has the jurisdiction to entertain an evidentiary challenge to the substantive allegations contained in a Dismissal Notice, or is bound to accept them as non-rebuttable presumptions, thus does not arise in this case.

. On June 6, 2012, after oral argument before this Court, The Tulalip Tribal Court issued a Judgment in TUL-Cr-MC2011 0814 finding B.B. guilty of four charges of theft arising from the same incidents that served as the basis for his dismissal in these civil proceedings.

. B.B. did not challenge the accuracy of the claims of misconduct before the Employment Court or in this Court, perhaps because he was facing criminal charges in connection with the facts underlying these conclusions and did not want to prejudice his criminal defense.

. Appellee TUA does not contradict B.B.'s claims that Hunter does not have these certifications.